UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KEM WOOD,

                     Plaintiff,                    Civil Action No.: 13-cv-12572
                                                      Honorable Bernard A. Friedman
      v.                                 Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                     Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 11]**

Plaintiff Kem Wood brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.      RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") did not err in his determination of Wood's credibility or in his ultimate conclusions, and that his decision is supported by substantial evidence of record. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Wood's motion [9] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

**II.    REPORT**

    **A.    Procedural History**

On October 21, 2010, Wood filed applications for DIB and SSI, alleging disability as of December 8, 2009. (Tr. 137-48). The claims were denied initially on January 25, 2011. (Tr. 75-82). Thereafter, Wood filed a timely request for an administrative hearing, which was held on October 4, 2011, before ALJ Elliott Bunce. (Tr. 27-48). Wood, represented by attorney Mikel Lupisella testified, as did vocational expert ("VE") Timothy Shaner. (*Id.*). On October 12, 2011, the ALJ found Wood not disabled. (Tr. 13-26). The ALJ's decision became the final decision of the Commissioner when, on April 10, 2013, the Appeals Council, after a review of additional exhibits, denied review. (Tr. 1-5; 315; 329-89).[1] Wood filed for judicial review of the final decision on June 12, 2013. [1].

    **B.    Framework for Disability Determinations**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the

---

[1] In this Circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review, and thus district court review is limited to the record before the ALJ, which is considered the final decision of the Commissioner under such circumstances. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. *Plaintiff's Reports and Testimony*

Wood reported that the conditions preventing her from working are seizures, bipolar disorder and anxiety.  (Tr. 169).  However, she reported that she was still working after her alleged onset date as a home healthcare worker.  (*Id.*).  It was determined during the hearing that she was being paid by the State to care for her elderly mother who had undergone a kidney

transplant. (Tr. 33-34). She stopped that work because her anxiety worsened. (Tr. 36). She lived alone and also periodically with her daughters. (Tr. 31).

Wood reported being treated by a neurologist and mental health clinics for her conditions, including an opioid addiction, and taking a number of medications. (Tr. 172-75). She testified that her medications cause fatigue and hand shaking. (Tr. 37). She reported having had only two seizures in the last twelve months, and her step-sister confirmed she seemed to have them "every 2-6 months. (Tr. 179; 181). However, at the hearing she testified that she experiences seizures every one to two months. (Tr. 34). She testified to a loss of consciousness with her seizures and an intense feeling of tiredness afterwards. (Tr. 35; 197). Wood reported that her bipolar disorder makes it difficult to be around others, and that on some days she has a hard time getting out of bed and on others she has a hard time sleeping. (Tr. 197-98). She reported attending a drug rehabilitation program twice a week, caring for her dog, preparing simple meals, doing laundry, ironing, attending church and shopping. (Tr. 198-201). She can go out alone, but does not drive due to her seizures. (Tr. 35; 200). She enjoys reading and television, but reported having difficulty concentrating. (Tr. 201). She takes two to three naps a day for two hours each. (Tr. 40).

Wood reported that her conditions impede her ability to remember, complete tasks, concentrate, understand, follow instructions and get along with others. (Tr. 202). She can pay attention for an hour, sometimes follows instructions well, does not handle stress or changes in her routine well, and was once fired due to problems getting along with others. (Tr. 38; 202-203). However, she reported no problem with authority figures. (Tr. 203).

In a subsequent disability appeals form, Wood reported that her seizures were uncontrolled, and that she now had arthritis in her hands for which she was receiving injections.

4

(Tr. 221). However she reported that these changes occurred around the time of her original alleged onset date, or 2009. (*Id.*). At the hearing, Wood testified that problems with her hands make lifting and carrying objects difficult, and that she had a difficult time standing or walking for any length of time due to lower back problems. (Tr. 38-39). She also has trouble sitting because she gets "really antsy." (Tr. 39). She testified to receiving injections in her hands for carpal tunnel syndrome. (Tr. 41).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Wood's medical record, and she does not challenge the ALJ's interpretation of any specific piece of medical evidence. Rather, Wood simply points to certain pieces of medical evidence which she claims support her argument that the ALJ erred in assessing her credibility. Accordingly, in lieu of summarizing Wood's medical history here, the Court will make references and citations to the record as necessary in its discussion of the parties' arguments.

### 3. *The ALJ's Findings*

Following the five-step sequential analysis, the ALJ concluded that Wood was not disabled. At Step One he determined that although she had garnered a significant amount of income in 2010, there was no clear evidence that she had engaged in substantial gainful activity after her alleged onset date. (Tr. 18). At Step Two he found the following severe impairments: "seizure disorder; numbness and tingling in the hands; bipolar disorder; post-traumatic stress disorder; substance-addiction disorder." (Tr. 19). At Step Three he determined that none of Wood's severe impairments, either alone or in combination, met or medically equaled a listed impairment; specifically comparing her impairments to Listing 11.02 (epilepsy – convulsive), 11.03 (epilepsy - nonconvulsive), 12.04 (affective disorders), 12.06 (anxiety disorders) and 12.09

(substance addiction disorders). (Tr. 19-20). In making this determination, the ALJ found that Wood suffered from mild restriction in her activities of daily living, moderate difficulty in maintaining social functioning, and moderate difficulty maintaining concentration, persistence and pace, but no episodes of decompensation. (Tr. 20).

Next, the ALJ assessed Wood's residual functional capacity, finding her capable of work that did not require

> exertion above the light level . . . or more than occasional fingering; or exposure to hazards, such as heights, dangerous machinery, or driving; or more than simple, routine, repetitive tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of wok in a specified period of time; or any interaction with the public to perform job duties.

(Tr. 21). At Step Four the ALJ concluded that Wood could not return to her past relevant work. (Tr. 22). At Step Five he determined that, based on Wood's age, education, vocational background and RFC assessment, there were a significant number of other jobs in the national economy that she could still perform. (Tr. 22-23). The ALJ's conclusion was based in part on vocational expert ("VE") hearing testimony that found that using the RFC outlined above, Wood could perform the jobs of shipping clerk (30,000 jobs nationally) and mail clerk (40,000 jobs nationally). (Tr. 45).[2] Accordingly, the ALJ found Wood not disabled. (Tr. 23).

### D.    The Parties' Motions

#### 1.    *Wood's Claims of Errors*

Wood argues that the ALJ erred in his assessment of her credibility, which she claims is supported by the medical evidence. She claims that this led the ALJ to pose a hypothetical

---

[2] The Dictionary of Occupational Titles ("DOT") codes the VE gave for these jobs was DOT 222.387-014 for the shipping clerk position and DOT 208.685-014 for the mail clerk position. (Tr. 45). The VE further testified that his testimony was not in conflict with the DOT. (Tr. 45-46).

6

question to the VE that did not properly account for Wood's limitations.

Wood also takes issue with the VE's testimony. First, she argues that the VE's testimony does not comport with the Dictionary of Occupational Titles ("DOT") in that the DOT code identified for the job of shipping clerk is actually the code for car checker, and the DOT code for mail clerk is actually the code for mail machine operator, two jobs she argues are very different from the ones identified by the VE (although she does not say how they are different). She mentions that the VE's testimony noted that the available jobs precluded more than one absence a month or the ability to nap during the day, and although she fails to link it in argument, the Court assumes she takes issue with this testimony as it compares to her own that she naps two to three hours several times a day and has seizures every one or two months. Finally, she provides the Court with two pages of case law relating to the treating physician rule, but makes no argument that the rule was violated here.[3]

### 2.     *Commissioner's Motion for Summary Judgment*

The Commissioner argues that substantial evidence supports the ALJ's conclusion that Wood is not disabled. The Commissioner first argues that the ALJ properly assessed Wood's credibility and the record evidence as they relate to both her mental and physical impairments. Finally, the Commissioner argues that the ALJ properly relied on the VE's testimony, noting that case law makes clear that an ALJ may rely on VE testimony where the ALJ inquires, and the VE testifies, that the testimony is consistent with the DOT, as happened here.

---

[3] Wood's failure to even make, let alone fully develop, an argument regarding the treating physician rule constitutes a waiver of any argument she may otherwise have had on that issue. *See Martinez v. Comm'r of Soc. Sec.* No. 09-13700, 2011 U.S. Dist. LEXIS 34436 at *7 (E.D. Mich. Mar. 2, 2011) *adopted by* 2011 U.S. Dist. LEXIS 34421 (E.D. Mich. Mar. 30, 2011) (noting that "[a] court is under no obligation to scour the record for errors not identified by a claimant" and "arguments not raised and supported in more than a perfunctory manner may be deemed waived") (citations omitted).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health*

*& Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F. Analysis**

*1. Credibility*

The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to her credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Thus an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

Here, the ALJ properly assessed Wood's credibility. As noted above, the ALJ considered

Wood's reports and testimony about her daily activities, pain and stated limitations, and compared them to the objective medical evidence of record. He specifically detailed pieces of evidence in the record that contradicted Wood's subjective testimony. For example, although noting Wood's testimony that she had one seizure every one to two months, the ALJ found that the objective evidence of seizure history from Dr. Nael Tarakji, Wood's treating neurologist, did not support this allegation. (Tr. 19). The Court finds this conclusion supported by substantial evidence. Indeed, Dr. Tarakji's treatment notes generally noted either no recurrent seizures, (Tr. 291; 299; 302 (April 2010 treatment note documenting that Wood reported last seizure the year prior)), or failed to mention the issue of seizures at all (Tr. 293; 296 (no documentation of seizure activity other than notation of brain MRI "showing mesial temporal sclerosis consistent with complex partial seizure); 310; 311; 312). On only one occasion did he even document "seizure-like activity." (Tr. 292). Moreover, according to Wood's own reports to the consulting psychological examiner, her seizures were "under control" and occurring only "once or twice per year." (Tr. 305).

The ALJ further found that objective evidence did not support Wood's allegations of an inability to use her hands due to tingling and numbness, noting that Wood had complained about her hands only a few times, and that no etiology had ever been determined for the pain, and that treatment for it had "been conservative." (Tr. 19; 21; 291-293; 303; 310-314). This finding is also supported by substantial evidence, as Dr. Tarakji's treatment notes document only Wood's subjective allegations of tingling and numbness as well as his occasional treatment of "injections." (Tr. 291-93; 302; 310-12). He makes no diagnosis regarding this condition (though he did find her "muscle strength of all muscle groups at 5/5") (Tr. 302) and the only objective studies conducted revealed no etiology for the symptoms. (Tr. 303 (Upper extremity

10

EMG revealed no carpal tunnel syndrome or other neuropathy)).

Finally, despite these findings, the ALJ included limitations in Wood's RFC to account for both conditions, including requiring no exposure to hazards or driving[4] to accommodate Wood's seizure condition, and no more than occasional fingering, to account for her hand condition. (Tr. 19). Woods offers no explanation or evidence as to why these limitations are inadequate.

Similarly, with regard to her mental impairments, despite Wood's claim that the ALJ found her testimony not credible, the ALJ in fact relied on Wood's own testimony and reports of her daily activities and abilities to generate his findings regarding her mental limitations, some of which were in her favor. (Tr. 19-22). The ALJ also relied on the State Agency consultant, Dr. Karen Marshall, Psy. D.'s 2011 report, which noted that Wood's most recent hospitalization was in 2004 when she contemplated suicide. (Tr. 19-20, 305). Dr. Marshall concluded that Wood "is able to understand, remember and complete simple tasks" and that although she "has difficulty in the social setting due to feelings of worthlessness and anxiety…[she] is able to do fairly well in regards to authority figures." (Tr. 307-08). The ALJ found that Wood had only mild limitations in activities of daily living due to her own statements that she lived alone for several months, took care of her mother as recently as January 2011, and had income of $11,013 in 2010. (Tr. 18, 20, 31, 33-34).[5] He found she had moderate difficulty in social functioning due to her

---

[4] The ALJ arguably should have mentioned Wood's testimony that her driver's license was revoked due to her seizures. (Tr. 32). However, that error was harmless in light of the ALJ finding a severe seizure disorder, and including a limitation against any driving in Wood's RFC.

[5] Confronted with evidence about her employment subsequent to her alleged onset date, Wood's counsel asked to amend her alleged onset date to January 1, 2011 "to get rid of any problems with SGA after [her original] alleged onset [date]." (Tr. 18, 32-33). Although the Court considers fully the merits of Wood's case, it notes that this statement could be construed as a waiver of her claim to benefits for the prior period. The ALJ took that matter under advisement, but ultimately rejected such an amendment, electing to consider her claim to benefits as of the

testimony and the consultative examiner's findings, despite noting that there was little in the record showing "a serious incident with family, friends, or authority figures during the relevant period." (Tr. 20; 203; 305-309). The ALJ found Wood moderately limited in her ability to maintain concentration, persistence and pace, based on Dr. Marshall's conclusion that she could understand, remember and complete simple tasks (which was mostly based on her own subjective statements at the consultative examination) and on the fact that "the record does not reflect repeated episodes of decompensation, each of extended duration." (Tr. 20; 305-309). Furthermore, as with her physical impairments, the ALJ generated specific limitations based on these findings, precluding Wood's interaction with the public, and limiting her to simple, routine tasks with one- or two-step instructions, and no production quotas. (Tr. 21).

In support of her argument, Wood offers her own testimony that she has seizures usually once every month to two months, but sometimes twice a week, that she has difficulty lifting, carrying and standing and that she needs to take frequent naps. (Tr. 34-36; 38-40). She also cites her testimony that she has a hard time concentrating and memorizing things. (Tr. 38). She argues that certain pieces of medical evidence support her testimony. However, the purported medical evidence on which Wood relies to support her testimony simply constitutes either her subjective reports to her doctors (*i.e.* reports to her neurologist that "she continues to have numbness and tingling involving her hands"), or basic diagnoses (i.e. diagnoses of "depressive disorder" and "bipolar disorder"), (Plf. Mot. at 11-12), and a diagnosis of a disease alone is not sufficient to render a claimant disabled. *See Dukes v. Comm'r of Soc. Sec.*, No. 10-436, 2011 U.S. Dist. LEXIS 105526 at \*16, 2011 WL 4374557 (W.D. Mich. Sept. 19. 2011) *quoting McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 U.S. App. LEXIS 11791, 2000 WL

---

initial alleged onset date. (Tr. 16, 18). Wood does not challenge this aspect of the ALJ's decision.

687680 at *5 (6th Cir. May 19, 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual.").[6] At any rate, Wood fails to point to any evidence of record supporting limitations more restrictive than those imposed by the ALJ. *Mitchell v. Astrue*, 256 Fed. Appx. 770, 772 (6th Cir. 2007) (RFC is assessment of what claimant can do, not what she suffers from, and RFC adequate where record devoid of evidence of more restrictive functional limitations).[7] Furthermore, the medical evidence of record supports the ALJ's conclusions. As discussed above, the medical record revealed that Wood's seizures were infrequent and well-controlled with medication. Her hand and arm pain was never diagnosed, and treated only with occasional injections. Treatment notes of Wood's mental impairments are sparse, but appear to show treatment through outpatient therapy. (Tr. 243-73). During that period her Global Assessment of Functioning ("GAF") scores rated between 50 and 55, but there was little discussion of the reasons behind those scores. (Tr. 243-73). Besides the consultative examination, only one other mental evaluation appears in the record, which found "no substantial impairment" and ultimately

---

[6] Wood also points to other evidence of her mental impairment, including additional inpatient treatment evidence that might be relevant if it were not for the fact that it post-dates the ALJ's decision. (Tr. 315-379). *See Jackson v. Comm'r of Soc. Sec.*, No. 11-14672, 2013 U.S. Dist. LEXIS 37896, *3 n.1 (E.D. Mich. Feb. 19, 2013) (District Court review of administrative record is limited to that which was before the ALJ where Appeals Council denied request for review despite submission of additional evidence).

[7] While the absence of any medical opinion regarding Wood's physical functional limitations might, under different circumstances, give this Court pause, it finds that this is one of the "limited occasions where the medical evidence is so clear that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source." *Allen v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 150236, * 46 (E.D. Mich. Sept. 13, 2013) (*citing Mitsoff v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 9929, (S.D. Ohio Mar. 15, 2013); *see also Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about the functional capacity even without a physician's assessment.").

13

denied therapy services. (Tr. 230-38). Wood also underwent a bio-psycho-social assessment for drug rehabilitation, but the form was based mostly on her own subjective answers, and no objective assessment was performed, although a diagnosis of opioid dependence was made, along with the issuance of a GAF score of 50. (Tr. 274-88). Finally, the conditions discussed by her treating therapist, which included depression, social anxiety and panic attacks, were also documented by the consulting examiner, whose findings were included in the ALJ's RFC. (Tr. 239-40; 307-308). Therefore, the Court finds that the ALJ's decision is supported by substantial evidence of record. For these reasons, the Court finds no error with the ALJ's assessment of Wood's credibility and that substantial evidence supports his findings.

### 2. *Adequacy of Hypothetical*

An ALJ is entitled to rely upon the testimony of a VE in response to hypothetical questions to the extent those questions accurately portray the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). It should be noted, however, that an ALJ is only required to pose those hypothetical limitations that she finds credible. *Burbo v. Comm'r of Soc. Sec.*, No. 10-2016, 2011 U.S. App. LEXIS 26143 (6th Cir. Sept. 21, 2011) *citing Stanly v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994).

Here, Wood appears to argue that the ALJ erred in not including limitations of more than one absence a month or more than the usual amount of break time during the day that, according to the VE, would have eliminated competitive employment. (Tr. 46). However, as discussed above, Wood offers no evidence, other than her own subjective testimony (which the ALJ properly weighed), that these limitations were necessary. As the ALJ found, the objective medical evidence did not support Wood's claims regarding the frequency of her seizures, and

other than post-seizure, there was no evidence that she required frequent naps during the day to function. (Tr. 19; 21). Similarly, besides the rest necessary post-seizure, the only other evidence that would support a need to nap would have been Wood's own reports of medication side effects, which the ALJ specifically and properly noted were not supported by the record evidence. (Tr. 22). Therefore, the ALJ did not err in not including these limitations in his hypothetical.

### 3. *Reliance on VE Testimony*

Finally, Wood argues that the ALJ erred in relying on VE testimony that misstated the DOT codes for the jobs the VE found Wood capable of performing. However, "[t]he ALJ is under no independent obligation to verify the accuracy of the VE's testimony beyond what is required under Ruling 00-4p, 2000 SSR LEXIS 8 . . . [n]or is the ALJ bound by the DOT in making his final disability determination." *Baker v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 84284 at *14 (E.D. Mich. June 18, 2012).[8] As the Sixth Circuit stated in *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163 (6th Cir. 2009):

> Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications"). The ALJ fully complied with SSR 00-4p, 2000 SSR LEXIS 8 when he asked the VE whether there was "any discrepancy between [her] opinions and the DOT standards for the requirements of the jobs [she] named." *See Lindsley*, 560 F.3d at 606 (holding that the ALJ

---

[8] Ruling 00-4p provides, in pertinent part: "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."

> fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p, 2000 SSR LEXIS 8. Id. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief. See *Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir.2008).

*Id.* at 168-69. Here, too, the ALJ specifically asked the VE if his testimony comported with the DOT, to which the VE responded in the affirmative. (Tr. 45-46). Since Wood did not take issue with this testimony at the hearing, the ALJ was entitled to rely on the VE's testimony. The Court sees no error committed here.[9]

For all of these reasons, and after a full review of the evidence in this case, the Court finds the ALJ's conclusion that Wood was not disabled is supported by substantial evidence of record and should be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Wood's Motion for Summary Judgment **[9]** be **DENIED**, the Commissioner's Motion **[11]** be **GRANTED**, and this case be **AFFIRMED**.

---

[9] In addition to her arguments addressed above, Wood dedicates almost two pages of her brief to the law governing the treating physician rule. However, no treating physician opinion was generated in this case, nor did Wood make a treating physician argument in her brief. Therefore, this argument is waived. *See Martinez v. Comm'r of Soc. Sec.* No. 09-13700, 2011 U.S. Dist. LEXIS 34436 at *7 (E.D. Mich. Mar. 2, 2011) *adopted by* 2011 U.S. Dist. LEXIS 34421 (E.D. Mich. Mar. 30, 2011) (noting that "[a] court is under no obligation to scour the record for errors not identified by a claimant" and "arguments not raised and supported in more than a perfunctory manner may be deemed waived") (citations omitted); *see also Leveque v. Comm'r of Soc. Sec.*, No. 13-10685, 2013 U.S. Dist. LEXIS 183552 (E.D. Mich. Dec. 17, 2013) (Randon, M.J.) (finding that a similar brief in that case by the same counsel "consists largely of the same explanations of arguably relevant authority that he uses indiscriminately time and time again in filings with this Court.").

Dated: March 20, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 20, 2014.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager